UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                              :        Chapter 11

TOTAL CONTAINMENT, INC.                            :

         Debtor                                    :        Bankruptcy No. 04-13144

.................................................

MEMORANDUM

.................................................

Mr. George L. Miller, the chapter 11 trustee of the debtor entity Total

Containment, Inc. ("TCI"), seeks confirmation of his proposed "Amended Plan of

Liquidation," dated August 1, 2005, as modified on November 10, 2005.  Confirmation of

this proposed modified chapter 11 plan is opposed by the following entities and

individuals: Canam Steel Corp.; Finloc, Inc.; Finloc Capital, Inc.; Winston Towers 1988,

Inc.; Bernard Gouin; Marcel Dutil; Pierre Desjardins; Finloc US, Inc.; John R. Wright,

Jr.; and PolyFlow, Inc.  A confirmation hearing was held and the parties were afforded

the opportunity to offer evidence in support of their respective positions.  Thereafter, they

submitted post-hearing memoranda.

From my review of the post-hearing memoranda, it appears that some of the

issues posed by the objectors have been resolved.  As will be seen, the main legal issue

remaining in contention is the inclusion of exculpation clauses in the plan, which clauses

are implicated in litigation among the chapter 11 trustee and various objectors to

confirmation.

The relevant facts may be summarized as follows.

I.

TCI's bankruptcy case commenced with the filing of a voluntary petition under chapter 11 on March 4, 2004.[1]  Immediately, there was opposition to the debtor's management continuing in place and to TCI operating as a debtor in possession.  On March 10, 2004, the United States trustee filed an emergency motion to appoint a bankruptcy trustee or to dismiss this case.  After conducting hearings, I ordered appointment of a chapter 11 trustee on March 17, 2004, pursuant to 11 U.S.C. § 1104.  On March 19, 2004, the United States trustee selected Mr. Miller for this fiduciary position, pursuant to 11 U.S.C. § 1104(d).

Mr. Miller then undertook to liquidate TCI's assets for the benefit of creditors.  He also embarked upon a course of litigation against various individuals and entities including all of the objectors to confirmation, as well as against the Bank of America, N.A.  The litigation with the Bank of America has settled.  In general, the individuals that remain the target of the trustee's litigation efforts are former officers and directors of the debtor, and the entities remaining are related in some fashion to some of the individual defendants.

Mr. Miller and Mr. Tomlin, a member of the trustee's accounting firm, testified at the confirmation hearing that the trustee had settled his dispute with the Bank of America and liquidated some other assets, so that he had $882,000 in cash on hand.  The trustee had also begun the process of selling TCI's European assets, referred to as TCIE.  The debtor's book value for TCIE is $2.3 million, Ex. T-5A, and Mr. Miller stated

---

[1]The docket entries in this case were offered in evidence as Ex. T-1.

2

that he had been offered only $350,000 for these assets.  Id.  That offer had not been accepted.  Moreover, before the trustee accepts any purchase offer, he may need to obtain a tax certification from the IRS.

Mr. Miller and his accountants have prepared an estimate of their anticipated recovery from all of the assets of the debtor.  At the most conservative end, the trustee anticipates recovering not less than $1,248,000.  Ex. T-5A.  At the most optimistic end, he hopes to obtain $26,761,000.  Id.  The extraordinary spread between these two extreme liquidation estimates occurs for the following reasons: First, the optimistic projection includes a sale price for TCIE of $2.3 million, while the conservative projection assumes a sale price of only $350,000.  Second, the trustee commenced a lawsuit against Mr. Dutil and other former directors and officers of the debtor, plus certain Canam entities and Finloc entities, as well as Winston Towers and PolyFlow, demanding damages of $23 million.  This lawsuit is docketed at Adv. No. 05-0145 and is bitterly contested.  See In re Total Containment, Inc., 335 B.R. 589 (Bankr. E.D. Pa. 2005).  The trustee's optimistic estimate of his ultimate liquidation of all TCI assets assumes a $23 million recovery from these defendants, while the pessimistic valuation assumes no recovery.  Ex. T-5A.

The trustee's proposed modified amended plan, Ex. T-6A, calls for himself, as "plan administrator," to continue post-confirmation the liquidation of TCI's remaining assets, litigating TCI's claims against other parties and resolving all disputed claims.  Id., at ¶¶ 11.0, 1.55.  In other words, the plan does not provide for the operation of the debtor entity; rather, it calls for the liquidation and distribution of all of the debtor's assets, including intangible assets.

3

The plan contains 7 classes of claims or interests.  Id., Article V.

Classes 1 and 2 are priority claims, and the plan proposes to repay these two classes on

the effective date of the plan, unless the claimants agree otherwise.  Id., ¶¶ 5.0 and 5.1.

By virtue of 11 U.S.C. § 1129(a)(9), all priority claimants (i.e., the chapter 11 trustee's

commission; trustee's counsels' fees; trustee's accountant's fees) must be paid in full on

the effective date of the plan, unless the holder of that expense claim agrees otherwise.

See In re Midway Airlines Corp., 406 F.3d 229, 242 (4th Cir. 2005); see also In re

Combustion Engineering, Inc., 391 F.3d 190, 243 n.59 (3d Cir. 2004).  Thus, the plan

complies with this statutory requirement, assuming that there is an effective date and that

it is feasible for Mr. Miller to comply with this provision.

In regard to feasibility, the trustee estimated in his testimony that the

priority claims now total about $535,000.  Mr. Tomlin testified to a higher estimate:

$625,000.  In either instance, the trustee's funds on hand, $882,000, would be sufficient

to pay these claims in full.  See also Ex. T-5A (low recovery column).

The amended plan provides that the "Effective Date means the first

Business Day on which all conditions in Article XIII of the Plan have been satisfied or

waived in accordance with the Plan."  Ex. T-6A, ¶ 1.36.   Article XIII of the Amended

Plan states:

**CONDITIONS TO CONFIRMATION AND
EFFECTIVENESS OF THE PLAN**

13.0. Conditions Precedent to Effective Date. The following
are conditions precedent to the Effective Date of the Plan
unless waived or modified by the Trustee in the discretion of
the Trustee and/or Plan Administrator pursuant to Section
13.1 of the Plan:

4

(a) The Bankruptcy Court shall have entered the Confirmation Order which shall be in form and substance satisfactory to the Chapter 11 Trustee, and the Confirmation Order shall have become a Final Order;

(b) The Plan Administrator shall have received sufficient funds that constitute Available Cash from the Insider Litigation and/or the liquidation of the remaining assets of the Estate or the subordination issues regarding the Disputed Secured Claims have been resolved;

(c) No stay of the Confirmation Order shall then be in effect at the time the other conditions set forth in this section are satisfied or waived; and

(d) There shall exist sufficient Available Cash to satisfy Administrative Expense Claims, Other Priority Claims and Priority Tax Claims which are Allowed Claims.(a.) [sic]

13.1. Waiver of Conditions. Each of the conditions to occurrence of the Effective Date is for the benefit of the Estate. Other than the requirements that the Confirmation Order must be entered, the Chapter 11 Trustee may, in his sole discretion, waive one or more of the conditions precedent set forth in section 13.0 of the Plan.

Ex. T-6A.

The trustee, in his post-hearing memorandum, at 4, states that he "shall waive the condition precedent in subsection (b)" of paragraph 13.0.  See also id., at 9.

The trustee has filed a report of plan voting, Ex. T-2, which reflects that class 6, an impaired class, voted in favor of the plan.  Class 4, the unsecured creditor class, narrowly missed acceptance under section 1126(c) (requiring "at least two-thirds in amount and more than one-half in number of the allowed claims" to vote in favor of the

plan), due to the negative votes of the objectors.[2]  Classes 3 and 5—also consisting of claims held by the objectors—rejected the plan.

Four additional plan provisions are relevant to the objections filed to confirmation.  First, section 11.3(d) states;

> **No Agency Relationship, Limitation of Liability of Plan Administrator, Indemnification and Insurance.**
>
> The Plan Administrator and his or her agents shall not be deemed to be the agent for any of the creditors in connection with the Cash held or distributed pursuant to the Plan. *The Plan Administrator and his or her agents shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct.* The Plan Administrator shall be indemnified and held harmless, including the costs of defending such claims, by the Debtor and its estate against any and all claims arising out of the performance of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence or willful misconduct. The Plan Administrator may obtain, at the expense of the Debtor, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligation of the Plan Administrator. The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party. The Plan Administrator may rely upon information previously generated by the Debtor.

(emphasis added).  Second, paragraph 15.3 similarly provides:

> **Exculpation.**  Neither the Chapter 11 Trustee, nor any of his employees, advisors, professionals, representatives or agents shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, negotiations regarding or concerning the Plan, the pursuit of confirmation

---

[2]According to the trustee's voting report, 66.25% in amount and 83.3% in number of class 4 creditors voted in favor of his plan. Ex. T-2.

of the Plan, the consummation of the Plan or the
administration of the Plan or the property to be distributed
under the Plan, *except for willful misconduct or gross
negligence*, and, in all respects, the Chapter 11 Trustee, his
employees, advisors, professionals, representatives and agents
shall be entitled to rely upon the advice of counsel with
respect to their duties and responsibilities under the Plan.
Notwithstanding the foregoing, the Defendants in the Insider
Litigation, as defined herein, may assert counterclaims in the
Insider Litigation and in the Trustee's objection to their
claims, and the Trustee may challenge those asserted claims.

(emphasis added).

Paragraph 15.4 addresses post-confirmation attorney's fees in

the following manner:

**Post-Effective Date Fees and Expenses.**  From and after the
Effective Date, the Trustee shall, subject to court approval,
pay the reasonable fees and expenses of the Plan
Administrator (which shall be compensation based on the
percentages as set forth in Bankruptcy Code Section 326).
The reasonable fees and expenses of those professional
persons employed by the Plan Administrator incurred in
connection with the implementation and consummation of the
Plan, the reconciliation of Claims, the prosecution of Causes
of Action, or any other matters as to which such professionals
are employed, must, by the last business day of each month
following the month for which compensation is sought,
submit their respective monthly statements to the Plan
Administrator and the Office of the United States Trustee:
Attention Kevin P. Callahan. Such statements shall describe
in detail the services performed, the fees for such services and
the disbursements made in connection with the rendition of
such services. A notice of service will be sent to the parties
who filed a request for notice in this bankruptcy case pursuant
to Bankruptcy Rule 2002. The parties will have fifteen (15)
calendar days from the date of receipt of such statements to
review such statements and to object to such statements. At
the expiration of such fifteen (15) calendar day period, the
Plan Administrator shall promptly pay such statement, except
those fees and/or expenses as to which an objection has been
timely made in writing. In the event of objection, the parties
shall confer with one another and attempt to reach agreement
regarding the correct payment to be made. If agreement

7

cannot be reached within twenty five (25) calendar days of
receipt of the statement, the matter shall be submitted to the
Bankruptcy Court within seven (7) Business Days thereafter
in the form of a written objection setting forth the precise
nature of the objection and the monetary amount at issue.
Thereafter, the Bankruptcy Court will consider and dispose of
the objection. The Plan Administrator shall be required to pay
all compensation and expenses, or any portion thereof, that is
not the subject of a timely objection.

Finally, paragraph 5.2 of the trustee's proposed plan states:

5.2. CLASS 3  DISPUTED SECURED CLAIMS
(SUBCLASSES 3A-3H)

(a.) Impairment and Voting. Class 3 shall be impaired under
the Plan. The Chapter 11 Trustee will contest the right of
these claimants to vote on the Plan.
(b.) Distributions. The Chapter 11 Trustee disputes the
validity of the status of the claims in (a)-(i) as secured. With
respect to claims (c)-(h) herein, the claimants have not
identified any collateral. *The claimants have asserted a right
of set off, but a right of set off, even if applicable here, does
not make a claim secured by collateral.* In the event that the
claimants['] claims were secured by collateral, and such
collateral was sold, any lien held by the secured creditor
would attach to the proceeds of the sale. If it is determined
that the secured creditor['s claim] indeed is secured by
property of the estate, the secured creditor would be entitled
to such collateral. Should the Court so order, claimants
holding allowed secured claims may be entitled to post-
petition interest thereon. The claims have been filed by
alleged insiders and the Chapter 11 Trustee believes that the
alleged secured claims are invalid and will be classified as
general unsecured [claims] and the insiders['] claims will then
be subordinated based on principles of equitable
subordination. If the aforementioned claims are not
subordinated they will be in the class of general unsecured
creditors. Until such time as the Court determines whether the
claims of the insiders will be equitably subordinated, the
claims shall be treated as Class 4 claims and, to the extent
disputed, entitled to the protections of section 9.3. The
Trustee has also challenged the right of the insiders to vote on
the Plan. The claims of the insiders are the subject of the
Insider Litigation as defined herein. The Trustee intends to
object the following claims:

8

      a. Finloc, Inc. filed a secured claim of $2,220,300
      b. Finloc US, Inc. filed a secured claim of $961,954
      c. John R. Wright filed a secured claim of $175,000
      d. Winston Towers 1988, Inc. filed a secured claim of
      $1,727,955
      e. Polyflow, Inc. filed a secured claim of $28,110.29
      f. Marcel Dutil filed an unliquidated secured claim
      g. Pierre DesJardins filed a unliquidated secured claim
      h. Bernard Gouin filed an unliquidated secured claim
      i. Canam Steel Corporation filed a secured claim in the
      amount of $4,678,124.89

(emphasis added).


## II.


## A.


     11 U.S.C. § 1129(a) provides that a court shall confirm a chapter 11 plan if all of the requirements of that subsection are established.  The plan proponent has the burden of proof on these issues.  See, e.g., In re Arnold and Baker Farms, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994) ("debtor carries the burden of proving that a Chapter 11 plan complies with the statutory requirements for confirmation under §§ 1129(a) & (b)"), aff'd, 85 F.3d 1415 (9th Cir. 1996); In re Washington Associates, 147 B.R. 827, 830 (E.D.N.Y. 1992); In re Arc Water Treatment, 1998 WL 732875, at *3 (Bankr. E.D. Pa. 1998).  There is no dispute that the trustee has complied with many of these statutory requirements.

     For example, as mentioned earlier, the report of plan voting reflects that not every impaired class of creditors voted to accept the trustee's amended chapter 11 plan.

Under section 1129(a)(10), whenever there are impaired classes of claims, at least one, but not all, of those classes must vote to accept the plan.  See generally In re Combustion Engineering, Inc., 391 F.3d 190, 242-43.  That requirement is fulfilled in this instance by the accepting class 6.

Section 1129(a)(8) requires that every class either accept the plan or not be impaired by it.  That has not occurred in this instance.  Nonetheless, section 1129(b)(1) provides an exception to section 1129(a)(8).  In effect, whenever an impaired class votes to reject the plan, section 1129(b)(1) requires that confirmation be approved only "if the plan does not discriminate unfairly, and is fair and equitable" with respect to each rejecting impaired class.  See generally In re Ambanc La Mesa Ltd. Partnership, 115 F.3d 650, 653 (9th Cir. 1997).  This provision is largely met in this instance by the trustee's proposals to liquidate all assets and make distributions to creditors in order of their statutory priority.  See In re Dwellco I Ltd. Partnership, 219 B.R. 5, 13 (Bankr. D. Conn. 1998).

Although the objectors do not challenge the liquidating structure of the plan as being unfair, they argue that the provision concerning post-confirmation attorney's fees found in paragraph 15.4 of the proposed plan is not fair and equitable because it does not contain any requirement that "copies of the [post-confirmation] fee statements will be made available upon request to parties receiving the Notice of Service."  Memorandum of Canam Steet, et. al, at 19; Memorandum of Finloc US, Inc., et. al, at 11-12.  Thus, they fear that after confirmation, the plan administrator could dissipate the assets of the debtor in unmonitored (by them) attorneys fees.

The trustee has responded to this objection in the following manner:

> As is implicit in the Plan provisions providing for court
> review upon objection to the fee statements and as the Trustee
> testified, fee statements will be provided to the objectors if so
> requested.

Trustee's Memorandum at 20.  All of the objectors find this statement acceptable.

Memorandum of Canam Steet, et. al, at 19; Memorandum of Finloc US, Inc., et. al, at 12.

However, to insure no further disputes regarding this issue, any order of confirmation

issued under Fed. R. Bankr. P. 3020 shall contain this language.[3]


                                    B.


        The second issue—initially raise by me sua sponte but endorsed by the

objectors—is whether there is a true effective date for this plan, in light of the provisions

of Article XIII, particularly paragraph 13.0(b), quoted above.  A chapter 11 plan must

have an effective date, as a number of provisions regarding confirmation found in section

1129 make reference to it, and certain creditor rights are fixed as of the effective date.

See In re Potomac Iron Works, Inc., 217 B.R. 170, 172 (Bankr. D. Md. 1997).  Moreover,

distributions to creditors are usually commenced on the effective date of the plan.  See In

re Yates Development, Inc., 258 B.R. 36, 42 (Bankr. M.D. Fla. 2000).  Without an

effective date, a proposed chapter 11 plan cannot be confirmed.  See id., at 43 (relying

---

        [3]Of course, this objection and resolution are only meaningful if this court has
jurisdiction to resolve fee disputes post-confirmation in a chapter 11 case.  The trustee and the
objectors assert that such jurisdiction exists, at least until a final decree is entered.  I agree that
such jurisdiction may exist.  See, e.g., United States Trustee v. Gryphon at the Stone Mansion,
Inc., 166 F.3d 552, 555-56 (3d Cir. 1999); In re Gulf Coast Orthopedic Center, Inc., 283 B.R.
335 (Bankr. M.D. Fla. 2002); In re East Hill Mfg. Corp., 2001 WL 34808428, at *3-*4 (Bankr.
D. Vt. 2001); see also In re Canal St. Ltd. Partnership, 260 B.R. 460, 462 n.2 (Bankr. D. Minn.
2001).

upon section 1123(a)(5), which is incorporated into the confirmation process by section 1129(a)(1)).

As originally proposed by the chapter 11 trustee, the effective date of the plan would arise only if he were successful in his pending litigation with the plan objectors.  As such litigation may not be successful, and may take many years to be concluded, this provision could render the plan non-confirmable.  See id. (plan provision that the effective date would occur only if the debtor obtained a favorable appellate court ruling precluded confirmation).

In his post-confirmation memorandum, the trustee now proposes to waive the provisions of paragraph 13.0(b).  He suggests an effective date of "March 30, 2006 or thirty days after entry of the confirmation order, whichever is later."  Trustee's Reply Memorandum, at 4.  While this modification would establish a true effective date, the objectors complain that this amendment of the plan requires re-solicitation and re-voting by creditors.  They also complain that the trustee may not have sufficient funds to implement such an effective date.

As to the first issue posed by the objectors, I note that paragraph 13.1 of the plan authorized the trustee to waive some or all of the preconditions found in paragraph 13.0.  Thus, creditors who voted for the plan already were informed that a waiver was possible.  Accordingly, this type of modification does not require re-notification to creditors and re-voting by them.  See generally Fed. R. Bankr. P. 3019.

As to the second issue, I am persuaded by the evidence offered at confirmation that the trustee will be able to fulfill his plan obligations were the effective date modified as proposed.  He would have sufficient funds to do so.

12

Accordingly, this objection to confirmation is denied.

C.

The third objection complains about the following sentence found in paragraph 5.2 of the plan: "The claimants have asserted a right of set off, but a right of set off, even if applicable here, does not make a claim secured by collateral." The objectors argue that this statement violates 11 U.S.C. § 506(a), which defines an allowed secured claim.

Section 506(a) states in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. . . .

Thus, a "creditor's claim is secured to the extent of the amount subject to setoff." In re Patterson, 967 F.2d 505, 509 (11th Cir. 1992); see, e.g., In re Koch, 224 B.R. 572, 575 (Bankr. E.D. Va. 1998).

To the extent that the trustee is proposing a plan that would extinguish any valid, prepetition right of setoff that a creditor may have, I agree with the objectors that such a plan may not be confirmed over creditor opposition. See In re Continental Airlines, 134 F.3d 536, 542 (3d Cir.), cert. denied sub nom. United States v. Continental Airlines, 525 U.S. 929 (1998):

> To summarize, we reaffirm the ruling in <u>Norton</u> and hold that
> the right of a creditor to set-off in a bankruptcy reorganization
> proceeding must be duly exercised in the bankruptcy court
> before the plan of reorganization is confirmed; the failure to
> do so extinguishes the claim.

<u>In re Alta+ Castm LLC.</u>, 2004 WL 484881, at *6 (Bankr. D. Del. 2004).  In reviewing

paragraph 5.2 of the proposed plan, however, it is not clear that the trustee was proposing

to waive all setoff rights the objectors may have.  Any ambiguity on this point can be

clarified by ensuring in a confirmation order that the right of setoff is preserved.  <u>See</u> <u>id</u>.

at *6.  Therefore, there is no reason to deny confirmation on that issue.


                                    D.


        The final confirmation objection challenges the inclusion of exclupation

clauses in the proposed amended plan.  All the objectors maintain that the plan

exculpation clauses for the chapter 11 trustee and the plan administrator, wherein these

individuals are rendered immune from individual liability unless guilty of "gross

negligence or willful misconduct"—as opposed to simple negligence—are improper and

unfair.  This issue may be significant due to a pending adversary proceeding in this case.

         In that proceeding, the individual defendants have asserted that chapter 11

trustee Miller acted negligently during the course of his trusteeship in three respects:

First, that he failed to renew a directors and officers insurance policy that was in effect

when he became trustee, and failed to assert timely any claim for insurance coverage

under that policy.  Second, that he failed to vacate judgments that were entered

prepetition against the debtor.  And third, that he failed to promptly sell certain assets of

the debtor, which assets then diminished in value.  In response to these negligence claims,

Mr. Miller has asserted numerous affirmative defenses, including the "business judgment

rule."

Somewhat ironically, the individuals objectors who are defendants in the

trustee's litigation against them have also raised as an affirmative defense to his claims

the protections of the business judgment rule.  In connection with their motion to dismiss

the trustee's complaint, I previously observed:

> In general, "the business judgment rule reflects a policy of
> judicial noninterference with business decisions of corporate
> managers, presuming that they pursue the best interests of
> their corporations, insulating such managers from second-
> guessing or liability for their business decisions in the absence
> of fraud or self-dealing or other misconduct or malfeasance."
> Cuker v. Mikalauskas, 692 A.2d 1042, 1046 (Pa. 1997).
> Thus,
>
>> the business judgment rule should insulate
>> officers and directors from judicial intervention
>> in the absence of fraud or self-dealing, if
>> challenged decisions were within the scope of
>> the directors' authority, if they exercised
>> reasonable diligence, and if they honestly and
>> rationally believed their decisions were in the
>> best interests of the company. . . .
>>
>> Factors bearing on the board's decision will
>> include whether the board . . . was disinterested,
>> whether it was assisted by counsel, whether it
>> prepared a written report, whether it was
>> independent, whether it conducted an adequate
>> investigation, and whether it rationally believed
>> its decision was in the best interests of the
>> corporation (i.e., acted in good faith).
>
> Id.

In re Total Containment, Inc., 335 B.R. at 605; see also 7 Collier on Bankruptcy, ¶

1108.06 (15th ed. rev. 2005).

The business judgment standard differs from the application of a pure negligence standard for liability.  See Cuker v. Mikalauskas, 547 Pa. 600, 609-10 (1997). In certain instances, the business judgment rule is relevant to assess the proposed actions of bankruptcy fiduciaries.  See Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co., 318 U.S. 523, 550 (1943); Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39-40 (3d Cir. 1989). In other instances, it is not.  See In re O'Brien Environmental Energy, Inc., 181 F.3d 527, 535 (3d Cir. 1999); see generally 7 Collier on Bankruptcy, ¶ 1108.07 (15th ed. rev. 2005).

In arguing that the exculpation provisions of the proposed plan are invalid, the plan objectors note that a number of courts have concluded that a bankruptcy trustee may be held liable personally for negligent acts.  See, e.g., In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 7 (1st Cir. 1999).  The chapter 11 trustee concedes that some decisions so hold, but counters that a number of courts have held to the contrary, limiting liability to a gross negligence and willfulness standard.  See, e.g., In re Smyth, 207 F.3d 758 761 (5th Cir. 2000).[4]

The Supreme Court in Mosser v. Darrow, 341 U.S. 267, 272-73 (1951), held that a trustee could be personally liable for breaching his fiduciary duty of loyalty, but did not definitively resolve the issue of the proper scope of a bankruptcy trustee's liability for actions taken in the course of his fiduciary duties.  A review of decisions in this circuit also finds the issue opaque.

---

[4]In limiting a bankruptcy trustee's liability to gross negligence, some courts have relied upon the final report of the National Bankruptcy Review Commission § 3.3.2(D) (1997) (reprinted in Collier on Bankruptcy, Appendix G, Part 44 (15th ed. rev. 2005)).  See, e.g., In re J.F.D. Enterprises, Inc., 223 B.R. 610, 625-28 (Bankr. D. Mass. 1998), aff'd, 215 F.3d 1312 (1st Cir. 2000) (Table).

16

For example, in In re Sturm, 121 B.R. 443 (Bankr. E.D. Pa. 1990), a bankruptcy court found that a trustee could be liable for simple negligence, based upon that court's interpretation of two Third Circuit Court of Appeals decisions: In re Prindible, 115 F.2d 21 (3d Cir. 1940) and In re Lambertville Rubber Co., 111 F.2d 45 (3d Cir. 1940). The Prindible decision, however, found the trustee liable for distributing the proceeds of a secured creditor's collateral to pay administrative expenses without court approval or the approval of the secured creditor. "Negligence" is not referred to in that opinion, and that standard may not accurately describe the trustee's conduct.

Lambertville held the trustee liable for paying federal social security taxes and state unemployment compensation taxes to governmental entities that had never filed any claims in that bankruptcy case. In that decision, the Third Circuit does state "that the trustee acted negligently in paying the taxes referred to in this opinion. He must therefore be surcharged." But the Lambertville court also described the trustee's conduct in these terms:

> The trustee is charged with an intimate knowledge of the estate which he is administering and if he pays claims out of time and without the protection of an order of the court affirmatively authorizing such conduct, he must be certain that such payments will work no harm to any creditor. Under such circumstances he acts at his own risk and if his judgment is bad, he must accept the consequences. Such a rule is peculiarly applicable when the trustee as here makes payments not only without notice but without claims being filed, and in violation of the decree of the court appointing him.

Id., 111 F.2d at 48.

17

This latter description of the trustee's conduct may amount to "gross negligence," a phrase that the Fifth Circuit's <u>Smyth</u> decision held was aptly defined in <u>Black's Law Dictionary</u>:

> Gross negligence has been defined as:
>
>> The intentional failure to perform a manifest duty in reckless disregard of the consequences. . . . It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected.
>
> Black's Law Dictionary at 1033 (6th ed. 1990).

<u>Id.</u>, 207 F.3d at 762; <u>see also</u> <u>In re Scheidmantel</u>, 868 A.2d 464, 485 (Pa. Super. 2005) ("'The general consensus finds [that] gross negligence constitutes conduct more egregious than ordinary negligence but does not rise to the level of intentional indifference to the consequences of one's acts.' . . . Gross negligence may be deemed to be a lack of slight diligence or care comprising a conscious, voluntary act or omission in 'reckless disregard' of a legal duty and the consequences to another party.") (quoting <u>Ratti v. Wheeling Pittsburgh Steel Corporation</u>, 758 A.2d 695, 704-05 (Pa. Super. 2000), <u>appeal denied</u>, 567 Pa. 715 (2001)).

The objectors opposing confirmation of the trustee's amended plan maintain that a chapter 11 plan that purports to limit a chapter 11 trustee's liability (or a plan administrator's liability) only to acts constituting gross negligence or willful conduct, where a trustee would otherwise be liable for simple negligence, amounts to an improper

"discharge" of liability under section 524(e) (incorporated into the confirmation process

by section 1129(a)(1)), or is proposed in bad faith under section 1129(a)(3).[5]

This contention, however, may not accurately represent a trustee's liability

standard in this circuit.  For example, in In re PWS Holding Corp., 228 F.3d 224 (3d Cir.

2000), the Court of Appeals considered a series of challenges to the confirmation of a

chapter 11 plan.  One challenge was directed to a provision of the plan that the court

described as follows:

> The second issue regarding the releases has to do with
> Paragraph 58 of the Confirmation order, which releases
> Committee members and professionals who provided services
> after the petition date from certain liability for their work in
> the reorganization. The release in Paragraph 58 is limited to
> claims brought in connection with work on the bankruptcy
> reorganization plan, and it does not eliminate liability but
> rather limits it to willful misconduct or gross negligence. Huff
> and HSBC nevertheless argue that this release violates §
> 524(e) of the Bankruptcy Code because it affects the liability
> of another entity for the debt of the Debtors. The Debtors
> respond that the releases do not come within the meaning of §
> 524(e) and were consistent with the standard of liability under
> the Code.

Id., at 235.  The specific language of plan paragraph 58 at issue was quoted by the PWS

court:

> [N]one of the Debtors, the Reorganized Debtors, New
> Bruno's, the Creditor Representative, the Committee or any of
> their respective members, officers, directors, employees,
> advisors, professionals or agents shall have or incur any

---

[5]"[F]or purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 150 n. 5 (3d Cir. 1986) (quoting In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984)).  The challenge by the plan objectors to TCI's proposed limitation on the liability of the chapter 11 trustee and plan administrator could fall either under this good faith requirement or perhaps the fair and equitable provision of section 1129(b)(1).

liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan or the Administration of the Plan or the property to be distributed under the Plan, *except for willful misconduct or gross negligence*, and, in all respects, the Debtors, the Reorganized Debtors, New Bruno's, the Creditor Representative, the Committee and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the plan.

Id., at 246 (emphasis added).

In rejecting this confirmation challenge, the Third Circuit explained:

Section 524(e) provides that "[e]xcept as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Huff argues that the release in Paragraph 58 of the confirmation order violates § 524(e), because it affects the liability of the members of the Committee and professionals who provided services to the Debtors to third parties. However, *we believe that Paragraph 58, which is apparently a commonplace provision in Chapter 11 plans,[6] does not affect the liability of these parties, but rather states the standard of liability under the Code, and thus does not come within the meaning of § 524(e).*

Id., at 245 (footnotes omitted) (emphasis added).  Indeed, the appellate court further

observed:

Under Paragraph 58, members of the Committee and professionals who provided services to the Debtors remain liable for willful misconduct or gross negligence. Because we conclude that this standard of liability is the standard that

---

[6]There are a number of reported decisions describing confirmed plans with similar provisions.  See, e.g., Simmons v. 22 Acquisition Corp., 2005 WL 3018726, at *2-*3 (E.D. Tex. 2005); In re Enron Corp., 326 B.R. 497, 501 (S.D.N.Y. 2005); Osmar Sylvania, Inc. v. SLI, Inc., 2004 WL 2346021, at *1 (D. Del. 2004).

already applies in this situation, we believe that Paragraph 58 affects no change in liability.

Section 1103(c) of the Bankruptcy Code, which grants to the Committee broad authority to formulate a plan and perform "such other services as are in the interest of those represented," 11 U.S.C. § 1103(c), has been interpreted to imply both a fiduciary duty to committee constituents and a limited grant of immunity to committee members . . . . This immunity covers committee members for actions within the scope of their duties. The committee members and the debtor are entitled to retain professional services to assist in the reorganization. In Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 514 (S.D.N.Y. 1994), it was held that committee members and those professionals who provide services to the debtor with respect to reorganization, or to the committee members in their capacity as committee members, however, do remain liable for willful misconduct or ultra vires acts.

We agree with this interpretation of § 1103(c) and hold that it limits liability of a committee to willful misconduct or ultra vires acts. The release in Paragraph 58 sets forth the appropriate standard for liability that would apply to actions against the committee members and the entities that provided services to the Committee in the event that they were sued for their participation in the reorganization.  It does not affect the liability of another entity on a debt of the debtor within the meaning of § 524(e).

Id., at 246-47.

Thereafter, in Western Mining & Investments, LLC. v. Bankers Trust Co., 2003 WL 503403, at *4 (D. Del. 2003), and in In re Exide Technologies, 303 B.R. 48, 74 (Bankr. D. Del. 2003), the PWS ruling was construed by courts of this circuit as permitting similar plan exculpation provisions, even to non-creditor committee members, if limited to postpetition conduct.  See also In re Coram Healthcare Corp., 315 B.R. 321, 337 (Bankr. D. Del. 2004):

Specifically, the Trustee's Plan purports to release third party claims against the Trustee, the Equity Committee and their respective agents and professionals. (Trustee's Plan at §§ 9.2

21

& 9.4.) Such provisions are not permissible except to the
extent they are limited to post-petition activity which does not
constitute gross negligence or wilful misconduct. See, e.g.,
PWS Holding Corp., 228 F.3d at 236-37 (holding that
exculpation clause in plan which frees parties and
professionals from third party claims is permissible so long as
it is restricted to applicable standard of the duty owed to the
estate by that party and professional). To the extent the
Trustee's Plan provides any release beyond the PWS ruling, it
must be modified.

Other jurisdictions have permitted such restraints on liability as well.  See In re Friedberg,

1995 WL 733636 (S.D.N.Y. 1995).

A related issue to plan exculpation provisions surfaced in In re United

Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), wherein the United States trustee

objected to a retention agreement entered into by a chapter 11 debtor in possession with a

professional financial advisor.  The challenged agreement called for the debtor to

indemnify the financial advisor for its liability for simple (as opposed to gross)

negligence.  Id., at 222.  The Third Circuit concluded that such an indemnification

provision was reasonable, under section 328.  Id., at 230.  In reaching this conclusion, the

appellate court noted that the potential liability of this professional would be measured by

the business judgment standard.  Id., at 233.

In discussing its prior decision in PWS Holding Corp., the Third Circuit in

United Artists observed that this earlier ruling did not mandate approval of the financial

advisor indemnification clause then at issue.  The appellate court limited the holding of

PWS as follows:

More to the point, PWS did address the standard of liability
for creditor committee members under § 1103(c) of the
Bankruptcy Code, holding that this provision "limits liability
of a committee to willful misconduct or ultra vires acts."
PWS, 228 F.3d at 246. While it is unclear whether the Court

22

> meant to include professionals to committees as well (the very
> next sentence refers to "the entities that provided services to
> the Committee in the event that they were sued for their
> participation in the reorganization," id. at 246-47) and
> whether the rubric "ultra vires acts" is intended to cover any
> form of negligence, in no event does PWS cover more than
> immunity from liability under § 1103(c). The level of
> indemnity of professionals a debtor employs under § 327 is
> what is at issue in this case. Therefore, we cannot hold that
> the release moots an issue we have not yet examined.

Id., at 227 n.10.

After the Third Circuit rulings in PWS and United Artists, a bankruptcy

judge in Delaware noted that chapter 11 plan provisions that limited the liability of

attorneys engaged to represent the chapter 11 debtor to gross negligence and willful

misconduct is permissible under the Bankruptcy Code.  In re eToys, Inc., 331 B.R. 176

(Bankr. D. Del. 2005):

> The Plan provided releases to Gold, MNAT and TBF for "any
> act taken or omission occurring on or after the Petition Date
> in connection with or related to the Debtors, the Plan
> Administrator or the Chapter 11 Cases . . . except for acts
> constituting willful misconduct or gross negligence." (See
> Plan at § 7.2(e).)  This provision is consistent with Third
> Circuit authority.  See, e.g., In re United Artists Theatre Co.,
> 315 F.3d 217, 230 (3d Cir. 2003) (holding that
> indemnification provision in retention application of
> professional which excludes gross negligence and willful
> misconduct is consistent with professional's fiduciary duty to
> the estate under the Bankruptcy Code and Delaware law); In
> re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000)
> (holding that release in plan of committee's professionals
> from liability for acts other than gross negligence or willful
> misconduct is consistent with the Bankruptcy Code).

Id., at 187.

Without now attempting to establish a standard by which the conduct of all

bankruptcy trustees is measured, I do agree with the interpretation of PWS and United

Artists given in eToys.  In PWS, the Court of Appeals instructed that a chapter 11

creditors' committee could be exculpated in a chapter 11 plan from simple negligence

claims, because they would not be held to such a standard, independent from the

confirmation process.  The United Artists decision held that the standard for determining

liability for chapter 11 professionals appointed under section 327 and 328 is the business

judgment rule, a standard that could exclude liability for mere negligence.

Accordingly, the Third Circuit appears to hold that a chapter 11 trustee is

not subject to liability for mere negligent acts under the present Bankruptcy Code.  See

also State of Illinois, Dept. of Revenue v. Schechter, 195 B.R. 380, 384 (Bankr. N.D. Ill.

1996).  Thus, a proposed chapter 11 plan that would limit a chapter 11 trustee's liability

(and that of a post-confirmation plan administrator) to gross negligence and willful

misconduct is permissible under section 1129.

An appropriate order confirming the trustee's proposed amended plan shall

be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                         :      Chapter 11

TOTAL CONTAINMENT, INC.                       :

              Debtor                          :      Bankruptcy No. 04-13144bif

................................................

ORDER

................................................

AND NOW, this 5th day of April 2006, for the reasons stated in the above-captioned memorandum,

And a confirmation hearing having been held in the above-captioned case on the chapter 11 trustee's proposed "Amended Plan of Liquidation," dated August 1, 2005, as modified on November 10, 2005,

And the debtor's report of plan voting having been filed which states that an impaired class of claims voted in favor of the proposed plan,

And a disclosure statement under 11 U.S.C. § 1125 having been sent to all creditors and interest holders,

It is hereby ordered that the various objections to confirmation to the trustee's amended plan are denied and the plan is confirmed pursuant to 11 U.S.C. § 1129(b),

And it is further ordered that this court will retain subject matter jurisdiction of postconfirmation disputes only to the extent allowed by federal bankruptcy law, any language in the confirmed plan notwithstanding,

It is also ordered that the debtor does not receive a discharge pursuant to 11 U.S.C. § 1141(d)(3),

It is further ordered that the debtor shall file monthly reports required by Local Bankr. R. 3021.1 until the case is closed and shall serve those reports upon the office of the United States trustee and upon any party in interest who requests such service,

And it is also ordered that

1. The effective date of the confirmed plan shall be 30 days from the date of entry of this order;

2. Copies of all post-confirmation fee statements shall be made available upon request to all parties receiving notice of the fee statements; and

3. The confirmation of this plan does not extinguish any existing right of setoff held by any creditor.

The plan proponent shall send notice of this order as required by Fed. R. Bankr. P. 2002(f)(7).

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Deirdre M. Richards, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd
Philadelphia, PA 19103

Linda Casey, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

Philip E. Wilson, Jr., Esquire
DLA Piper Rudnick Gray Cary US LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103